# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TOM PERRINE, ) | CASE NO. 1:18-CV-49 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| NANCY A. BERRYHILL, ) | |
| *Acting Comm'r of Soc. Sec.*, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff, Tom Perrine (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 10). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On May 14, 2014, and June 12, 2014, Plaintiff filed his applications for POD, DIB, and

SSI, alleging a disability onset date of June 21, 2013. (Transcript ("Tr.") 313-320). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 240-259). Plaintiff participated in the hearing on December 7, 2016, was represented by counsel, and testified. (Tr. 113-161). A vocational expert ("VE") also participated and testified. *Id*. On March 23, 2017, the ALJ found Plaintiff not disabled. (Tr. 105). On November 9, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-2). On January 9, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 15).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly evaluate the opinions of both treating and non-treating medical sources, and (2) the RFC failed to sufficiently account for Plaintiff's limited use of the upper extremities. (R. 13).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On May 19, 2014, Plaintiff was seen by Kimberly L. Hardy, LPCC at the Far West Center for a mental health assessment. (Tr. 566-577). On mental status examination, Plaintiff was oriented x 4, had normal memory save for Plaintiff's report of short-term memory loss due to history of drug use, pressured and excessive speech, labile affect, and disorganized thinking. (Tr.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Furthermore, because this court finds the assignments of error associated with Plaintiff's mental impairments to be dispositive, the court foregoes any summary of Plaintiff's physical health records.

575). Plaintiff had poor insight and judgment, as well as paranoid thought content regarding his health. *Id*. He was diagnosed with major depressive disorder, recurrent, severe. (Tr. 576).

On August 25, 2014, Plaintiff presented to the ER with worsening depressive symptoms and suicidal ideation. (Tr. 716, 718). Kuldeep Vaghela, M.D., evaluated Plaintiff who was visibly depressed but cooperative. (Tr. 724). Plaintiff reported two past suicide attempts, both in 2008 and both by polysubstance overdose. (Tr. 725). On mental status examination Plaintiff had fair eye contact, no psychomotor agitation, and was positive for psychomotor impairment. (Tr. 729). He had a dysthymic mood; his affect was anxious, sad and constricted; his thought was linear and logical; he was positive for suicidal ideation but denied plan or intent; had poor impulse control; and he had fair insight and fair judgment. (Tr. 730). Plaintiff was hospitalized until his discharge on September 2, 2014, after treatment by Kuldeep Vaghela, M.D. (Tr. 1032-1039).

On October 11, 2014, Plaintiff was seen for follow up with Dr. Vaghela. (Tr. 925-929). On mental status examination, Plaintiff's affect was appropriate, but constricted; his mood was euthymic; he was well-groomed; made good eye contact; speech was logical, coherent, and goal-oriented; his recent and remote memory were unimpaired; activity level and psychomotor movements were normal; and his judgment was good. (Tr. 928). His principal diagnosis was major depressive disorder, recurrent, severe without psychotic features. *Id.* He assessed a current Global Assessment of Functioning ("GAF") score of 50.[2] *Id*.

---

2 The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be

3

On January 12, 2015, on mental status examination, Plaintiff was oriented in all spheres, had an expansive affect, euthymic mood, made good eye contact, had unimpaired memory, good judgment and excessive speech. (Tr. 930-933). Plaintiff attention/concentration was characterized by difficulty ignoring irrelevant stimuli, and his frustration tolerance was poor. (Tr. 932). He was assessed a current GAF score of 50. *Id*.

On March 18, 2015, Plaintiff saw Dr. Vaghela, and he presented with constricted affect, euythmic mood, unimpaired memory, made good eye contact and had and excessive speech. (Tr. 934-937). Again, Plaintiff's attention/concentration was characterized by difficulty ignoring irrelevant stimuli. *Id*. On May 22, 2015, Dr. Vaghela's mental status examination revealed, among other observations, logical and coherent speech as well as an ability to attend and maintain focus. (Tr. 938). On September 11, 2015, Dr. Vaghela noted that Plaintiff was experiencing moderate anxiety and worry, concern about his health, depressed mood and difficulty sleeping. (Tr. 941-942). His attention/concentration was characterized by the ability to attend and maintain focus. (Tr. 942). His Prazosin medication was increased again. *Id*.

On October 9, 2015, Plaintiff was taken to the ER after his ex-girlfriend called emergency services concerned that Plaintiff was having suicidal ideations. (Tr. 1111). Plaintiff denied suicidal ideations and stated he "does not know why she called." *Id*. "He appeared agitated and upset that his girlfriend called EMS." *Id*. His mood and affect were flat, his behavior uncooperative, and his judgment was impaired by abnormal thoughts. (Tr. 1114).

On November 16, 2015, Dr. Vaghela's mental status examination revealed Plaintiff was

---

unable to keep a job. *Id*. An update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

4

oriented in all spheres; he had an appropriate, pleasant, and calm affect; his mood was euthymic; his eye contact was good; his speech was logical and coherent; his memory was unimpaired; his psychomotor activity was normal; there was no evidence of conceptual disorganization; his insight and judgment were good; he was able to maintain attention/concentration; and his impulse control was reflective with the ability to resist urges. (Tr. 945). He assessed a GAF score of 50. *Id*. Dr. Vaghela noted Plaintiff's depression/anxiety was fairly well controlled on current medications and no changes were made to Plaintiff's prescription regimen. *Id*. The same day, Dr. Vaghela completed the mental RFC assessment, discussed in the next section, containing rather restrictive limitations.

On January 15, 2016, Plaintiff saw nurse practitioner Sandra Lavelle and told her that he was recently diagnosed with lupus and wished to restart counseling. (Tr. 1049). His mental status examination was largely unremarkable. *Id*. Plaintiff's dosage of Clonazepam was increased. (Tr. 1052). On July 20, 2016, Plaintiff was again seen by nurse practitioner Lavelle, and he reported struggling with depression and was seeking medication to augment his Vibryd prescription. (Tr. 1053). His mental status examination was again largely unremarkable. (Tr. 1054). Ms. Lavelle increased his dosage of Gabapentin. (Tr. 1056). On September 20, 2016, Plaintiff complained of depression, anxiety, panic attacks, and social isolation to nurse Lavell. (Tr. 1057). Mental status examination was again largely unremarkable. (Tr. 1058). His dosage of Vibryd was increased (Tr. 1060).

**2. Medical Opinions Concerning Plaintiff's Mental Functional Limitations**

On September 5, 2014, Plaintiff was seen by Charles F. Misja, Ph.D. for a psychological evaluation. (Tr. 732-740). On mental status examination, Dr. Misja observed that Plaintiff was adequately groomed, cooperative, and made good eye contact. (Tr. 735-736). His speech was

5

unremarkable and free from pathology such as loose associations. (Tr. 736). His affect was blunted and mood was depressed and stable. *Id*. Plaintiff rated his depression as high, denied suicidal ideation, and indicated that his time at Oakview was beneficial. *Id*. Plaintiff reported daily panic attacks and 9 of 10 anxiety, but Dr. Misja observed no manifestations of anxiety such as fidgeting, pacing, or scanning. *Id*. Plaintiff was oriented x 4, had no delusions/hallucinations, and there was no indication of bizarre or unusual thought content. *Id*. Plaintiff could recall two of three everyday words after an interval of five minutes, could not do serial sevens, "was able to get through serial 3s." (Tr. 737). Dr. Misja assessed Plaintiff's intelligence as fair, insight and judgment as poor, and assessed a GAF score of 40.[3] Dr. Misja diagnosed major depression (severe), bipolar II disorder (depressed), PTSD, and. generalized anxiety disorder. *Id*. Dr. Misja believed there appeared to be mild to moderate symptom exaggeration. *Id*. With respect to functional limitations, Dr. Misja opined that Plaintiff was able to understand and implement ordinary instructions, had minimal problem with maintaining attention and concentration, would require much attention from supervisors and relate rather poorly to others. (Tr. 378). Problems with respect to responding appropriately to supervision and coworkers in a work setting was believed to be intermediate to severe. *Id*. When asked to describe Plaintiff's abilities and limitations in responding to work pressures in a work setting, Dr. Misja opined that given Plaintiff's current functioning, he "would be overwhelmed by the demands of the work environment. Problems in this area are likely to be in the severe range." (Tr. 739).

On November 18, 2014, State Agency psychologist Aracelus Rivera, Psy. D., reviewed

---

[3] A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. A person who scores in this range may have illogical or irrelevant speech, and may avoid friends, neglect family, and be unable to work. DSM-IV at 32-34.

6

Plaintiff's records and completed a mental RFC assessment. (Tr. 176-178). Dr. Rivera assessed no marked limitations, and found moderate limitations in the following areas: the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, the ability to respond appropriately to changes in the work setting. (Tr. 177-178). Dr. Rivera believed Plaintiff could perform a wide array of tasks in an environment without strict time or production quotas. *Id*. Finally, he found Plaintiff "should have no more than superficial contact with co-workers, supervisors or the general public." (Tr. 177).

On February 11, 2014, State Agency psychologist Paul Tangeman, Ph. D., reviewed Plaintiff's records and completed a mental RFC assessment. (Tr. 215-217). Dr. Tangeman largely reiterated Dr. Rivera's findings, except that he assessed Plaintiff's ability to interact appropriately with the general public as markedly impaired. (Tr. 216). Dr. Tangeman also found that Plaintiff "should have no more than superficial contact with co-workers, supervisors or the general public." *Id*.

On November 16, 2015, Dr. Vaghela completed a checklist medical source statement concerning Plaintiff's mental capacity. (Tr. 946-947). Therein, Dr. Vaghela checked boxes indicating that Plaintiff could "rarely" make any occupational adjustments (including dealing with the public relating to co-workers, and interacting with supervisors); rarely understand, remember and carry out complex or detailed job instructions; and, occasionally understand,

7

remember and carry out simple job instructions.[4] *Id*. When asked to identify the diagnosis and symptoms that support the assessment, Dr. Vaghela responded that Plaintiff had a "[h]istory of major depressive disorder & Aspergers plus medical chronic [illegibile] + [g]eneralized anxiety disorder. (Tr. 947). He indicated he had treated Plaintiff since October of 2014. *Id*.

**B. Relevant Hearing Testimony**

At the hearing on December 7, 2016, the ALJ posed the following hypothetical question to the VE:

> For the first hypothetical … assume an individual of the claimant's age, education, and work experience. If you can also assume that this individual can lift, carry, push and pull occasionally 20 pounds, frequently ten pounds, stand and walk for four hours of an eight-hour workday, sit for six hours of an eight-hour workday, occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, occasionally stoop, crouch and crawl but — and this individual should never have any exposure to hazards, is also limited to — should not work at a production rate pace, have occasional interaction with supervisors, coworkers and the public and is limited to routine workplace changes.

(Tr. 156-157).

The VE testified that such an individual could not perform the Plaintiff's past relevant work, but identified a number of jobs such an individual could perform: mail clerk, Dictionary of Occupational Titles ("DOT") 209.687-026; warehouse checker DOT 222.687-010; and, office helper DOT 239.567-010—all three were unskilled positions. (Tr. 157). Collectively, the VE identified two million jobs nationally that fit the hypothetical. *Id*.

Plaintiff's counsel asked the VE to assume all the limitations in the ALJ's hypothetical and to consider the impact of the following additional limitations:

> There could be no … overhead reach with the right dominant upper extremity, there could be occasional chest-high lift or reach with the — with the right

---

[4] The form defines "rarely" as "activity cannot be performed for any appreciable time," and "occasional" as "ability for activity exists for up to 1/3 of a workday." (Tr. 946).

8

> dominant upper extremity, only occasionally — or occasional handle, finger and feel with the right dominant, mandatory use of a cane, no written instructions, everything would have to be demonstrated, no contact with the public, occasional contact with coworkers and supervisors. This is all in addition to those limitations laid out by the Judge.

(Tr. 158).

The VE opined such an individual would be unemployable primarily due to the limitations to occasional handling, fingering, and feeling; and due to the need for a cane to both stand and ambulate. (Tr. 158-159). In a response to a second hypothetical, the VE testified that the need for two hours of additional breaks would be work preclusive. (Tr. 159). In response to a third hypothetical, the VE testified that an individual who would miss two days of work per month on a regular basis would not be able to find competitive employment. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or

combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since June 21, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: rheumatic heart disease, systemic lupus erythematosus, affective disorders, anxiety disorders, substance addiction disorders, seizures, and cervical radiculopathy (20 C.F.R. § 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except the claimant can lift/carry and push/pull 20 pounds occasionally, and 10 pounds frequently. He can stand/walk for 4 hours and sit for 6 hours in a normal 8-hour workday. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. He can occasionally stoop, crouch, or crawl. He can never have exposure to hazards. The claimant cannot work at a production rate pace. He can have occasional interaction with supervisors, coworkers, and the general public. The claimant is limited to routine workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1979 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. § 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 21, 2013, through the date of this decision (20 CFR 404. 1520(g) and 416.920(g)).

(Tr. 94-105).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

   **1. Evaluation of Medical Opinion Evidence**

Plaintiff asserts the ALJ violated the treating physician rule with respect to the opinion of his treating psychiatrist, Dr. Vaghela (R. 13, PageID# 1506-1509), and also that the ALJ failed to explain why she did not include limitations assessed by Dr. Misja, a psychological consultative examiner, despite purporting to assign great weight to the opinion. (R. 13, PageID# 1512-1513). Finally, Plaintiff asserts the ALJ similarly did not explain why she excluded limitations assessed by the State Agency psychologists despite purporting to assign great weight to their opinions.

### a. State Agency Opinions

Plaintiff argues that the ALJ erred by failing to include limitations in the RFC—limitations that the ALJ ostensibly credited—from the State Agency psychologists. (R. 13, PageID# 1513). Indeed, the ALJ accorded great weight to the State Agency psychologists' opinions, Drs. Rivera and Tangeman, finding them to be generally consistent with the overall medical evidence of record. (Tr. 101). The ALJ expressly cites their opinion that Plaintiff "should have no more than superficial contact with co-workers, supervisors, or the general public." *Id.* The decision does not take any particular exception with this portion of their opinion, and goes on to again conclude that "great weight is given to the opinions of Dr. Rivera and Tangeman." (Tr. 101). The RFC limits Plaintiff to only occasional interaction with supervisors, coworkers, and the general public, but does *not* include a limitation requiring only superficial contact.

The Commissioner asserts that "the ALJ's decision to give great weight to [a medical source's] findings did not mean that the ALJ had to adopt every restriction noted by the doctor." (R. 15, *quoting Salisbury v. Comm'r of Soc. Sec.*, No. 5:11-CV-2277, 2013 WL 427733, at *7 (N.D. Ohio Feb. 1, 2013) (McHargh, M.J.)). The *Salisbury* decision, however, is distinguishable. Therein, the court observed that "[n]otably, neither the state agency physicians, nor Dr. Henderson indicated that Plaintiff's impairments required him to be away from his workstation for up to 20 percent of the day as Plaintiff suggests. Accordingly, the record supports the ALJ's ruling." *Id.* Here, the ALJ seemingly adopted the superficial contact limitations but then fails to incorporate it. Moreover, even if the court were to construe the decision as declining to adopt the limitation, there was no explanation for the decision. Finally, unlike in *Salisbury*, there does not

13

appear to be any clear medical opinion evidence discrediting such a limitation.[5]

Although an ALJ is not required to discuss every piece of evidence in the record to support her decision, an ALJ must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (*citing Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)). This is particularly important where two State Agency psychologists imposed the same superficial contact restriction, and the ALJ's decision accorded "great weight" to those opinions without addressing why such limitation was ultimately omitted. SSR 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Moscorelli*, 2016 WL 4486851, at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7); *see also Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at *14 (N.D. Ohio Oct. 22, 2018) (same).

While the ALJ incorporated the limitation that Plaintiff can have only occasional interaction with coworkers, supervisors, and the general public (Tr. 98), there is no basis to conclude that occasional interaction and superficial contact are coterminous. The court cannot conclude that this error was harmless. Furthermore, the ALJ did not include the superficial contact restriction opined by Dr. Rivera and Dr. Tangeman in the questioning of the VE. (Tr.

---

[5] Conceivably, a decision could adequately satisfy the explanation requirement with respect to a rejected limitation without explicitly doing so. For example, a decision could accord great weight to several medical source opinions of the same ilk, where those opinions are not entirely consistent. It could reasonably be inferred that an ALJ, for example, did not credit limitations assessed by one source but not by the other. The case at bar, however, does not present such a scenario.

154-157). Although the ALJ need only incorporate those limitations accepted as credible into the hypothetical questions, *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15, 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993), 987 F.2d at 1235), the ALJ does not explain why the superficial contact restriction was omitted.[6] The court cannot determine whether the ALJ's hypothetical adequately incorporated all of Plaintiff's limitations. Absent such an explanation, the court is left to speculate. Further, given that the ALJ determined Plaintiff was unable to perform any past relevant work (Tr. 103), the burden shifted to the Commissioner at Step Five.[7] Without the benefit of VE testimony, the court cannot discern whether the additional restriction of superficial contact would have been outcome determinative or if it was merely harmless error not to include in the questioning.

This court further agrees with the reasoning of a recent decision from the district court for the Southern District of Ohio:

Despite assigning significant weight to the state-agency consultants' opinions (R.

---

[6] Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)).

[7] At the fifth and final step of the disability analysis, if a claimant cannot perform his or her past relevant work, it must be determined whether the claimant can make an adjustment to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding in this regard must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)).

47), the ALJ failed to adequately explain why he limited Plaintiff to "occasional contact with coworkers or supervisors" instead of contact "on a superficial basis [with] coworkers and supervisors" as recommended by Dr. Demuth. The terms "occasional" and "superficial" are not interchangeable. *See Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (quoting *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)). Thus, the absence of any explanation requires remand. *See, e.g., Barker v. Astrue*, No. 5:09 CV 1171, 2010 WL 2710520, at *5-6 (N.D. Ohio July 7, 2010) (finding that the ALJ erred by failing to include in plaintiff's "RFC the prior ALJ's findings, as adopted by the state agency physicians, that Plaintiff have no interaction with the public and only superficial interaction with co-workers and supervisors" where the ALJ only "limited Plaintiff to no more than occasional interaction with the public (as opposed to no interaction with the public, as in ALJ Hafer's assessment), and he made no mention of whether and to what extent Plaintiff can interact with co-workers and supervisors"); *Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit plaintiff to occasional rather than superficial interactions) (citing *Gidley v. Colvin*, No. 2:12-CV-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013)); *Cote v. Colvin*, No. 16-CV-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) ("The ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.").

Certainly, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). But where, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so. See, e.g., *Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission). Thus, the ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports his decision. See *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D.

Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); *Cote*, 2017 WL 448617, at *7 (requiring the ALJ to "build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment").

In sum, the undersigned finds that reversal is warranted because the ALJ assigned significant weight to the state-agency psychologists' opinions, but failed to include a limitation for "superficial" interaction or offer an adequate explanation for how the RFC he assessed accommodated that limitation.

*Cooper v. Comm'r of Soc. Sec.*, No. 2:18-CV-67, 2018 WL 6287996, at *4–5 (S.D. Ohio Dec. 3, 2018) (footnotes omitted), *report and recommendation adopted*, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019); *see also Mawyer v. Berryhill*, No. 2:16-cv-1140, 2019 U.S. Dist. LEXIS 43707, *21 (D.C. Nev., Feb. 28, 2019) (indicating "where the ALJ concludes that the claimant is functionally limited to 'only brief and superficial interaction with the public and coworkers,' he must adduce testimony from a vocational expert that there are other jobs that the claimant can perform with such a limitation."); *Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, *6 (N.D. Ohio, Jun. 8, 2017) ("[T]he VE testified that the limitations to superficial interaction relates to the 'quality of interaction,' and is more a measure of the intensity of the interaction, whereas terms like occasional or frequent relate to the quantity of interaction.")

Accordingly, the ALJ did not adequately explain why she apparently rejected the superficial contact restriction or, alternatively, if the restriction was silently accepted, the VE's testimony does not constitute substantial evidence to support the ALJ's decision at Step Five and a remand is required.

### b. Treating Source and Examining Source Opinions

With respect to the opinion of consultative examiner Dr. Misja, the ALJ noted, among other

observations, that Dr. Misja believed Plaintiff's "[p]roblems in the ability to interact with others are likely to be intermediate to severe. Problems in ability to handle stress are likely to be severe." (Tr. 102, citing Exh. 10F/7-8). The ALJ noted Dr. Misja's finding were consistent with the overall record and accorded his opinion great weight. (Tr. 102). However, it is questionable whether the assessed limitations, quoted above, are accounted for in the RFC determination. With respect to the opinion of treating psychiatrist Dr. Vaghela, the ALJ's analysis according partial weight to the opinion is admittedly brief. (Tr. 102). Further, it is unclear which portions were accepted and which were rejected. Finally, while some, arguably most, of the limitations assessed by Dr. Vaghela were not included in the RFC and hence rejected, the ALJ's rationale for doing so borders on the conclusory. Because the court finds a remand is necessary, as stated above, the court expresses no opinion on the issue of whether the ALJ's analysis of Dr. Vaghela and Dr. Misja's opinions was so deficient as to require a remand. Nevertheless, on remand, the Commissioner shall have an opportunity to further evaluate the weight accorded to these opinions.

Finally, as a remand is necessary, the court foregoes addressing any of Plaintiff's remaining assignments of error in the interests of judicial economy.

### IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 25, 2019